

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WASHONDA JACKSON AND | § | Case No. 10-41231 |
| THOMAS JACKSON | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | |
|---|---|
| NEW IMAGE MOTOR SPORTS | § |
| FINANCIAL, LLC | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| THOMAS JACKSON, | § |
| Individually and d/b/a NI 7 Financing and | § |
| as Trustee/Beneficiary of the TWJ Trust; | § |
| WASHONDA JACKSON, | § |
| d/b/a Symbolic; | § |
| JACKMAL MGMT., LLC, | § |
| SEVEN PRODUCTS MKTG., LP, | § |
| WHITEFIELD FINANCIAL, LLC, | § |
| NI 7 COMMUNICATIONS, INC., | § |
| NI 7 ENTERTAINMENT, LLC, | § |
| CAPFIN, LLC, TWJ TRUST, | § |
| NI 7 ALASKA AUTO SALES, LLC, | § |
| and NI 7 FINANCIAL, LLC | § |
| | § |
| Defendants | § |

## <u>MEMORANDUM OF DECISION</u>

ON THIS DATE the Court considered the Second Motion for Summary Judgment

Against Debtor, Thomas E. Jackson, filed by the Plaintiff, New Image Motor Sports

Financial, LLC ("Plaintiff"), in the above-referenced adversary proceeding.[1]  The

Plaintiff's First Amended Complaint (the "Complaint") seeks, among other relief, a

determination that the debt purportedly owed by the Debtor-Defendants, Thomas E.

Jackson and Washonda Jackson, is excepted from discharge under various subsections of

11 U.S.C. §523(a).  The Plaintiff's Second Motion for Summary Judgment pertains solely

to the interests of the Debtor-Defendant, Thomas E. Jackson (the "Defendant"), and

requests judgment as a matter of law against him under 11 U.S.C. § 523(a)(7), as a debt

"for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit."

*See* 11 U.S.C. § 523(a)(7).[2]  The Plaintiff asserts that, though the debt initially arose from

the entry of an agreed judgment against the Defendant and his spouse based upon their

breach of a settlement agreement between the parties, payment of that debt by the

Defendant was subsequently made a condition of criminal sanctions imposed against him

by a Texas state criminal court, thus rendering the debt non-dischargeable under §

523(a)(7).

Upon due consideration of the pleadings, the proper summary judgment evidence

submitted by the parties, and the relevant legal authorities, the Court finds that the

Plaintiff has met its burden to demonstrate that there is no genuine issue as to any

---

[1]  This Court has jurisdiction to consider the Plaintiff's First Amended Complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a).  The Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[2]  Thus, this Memorandum Opinion does not address in any way the causes of action asserted against the remaining Debtor-Defendant, Washonda Jackson, and those claims remain unaffected by this opinion in which Thomas Jackson is referenced for ease of reference as the "Defendant.".

material fact and is therefore entitled to judgment as a matter of law.

## Factual and Procedural Background[3]

This adversary proceeding is only the most recent chapter in the extended dispute by and among the Plaintiff, both of the Debtor-Defendants, and their associated business enterprises. Plaintiff, New Image Motor Sports Financial, LLC, is a Utah-based limited liability company holding a judgment debt against the Debtors, Thomas and Washonda Jackson. Thomas E. Jackson, the Debtor-Defendant against whom summary judgment is sought through this subject motion, and his spouse, Washonda Jackson, are individuals residing in Collin County, Texas who have allegedly conducted business under various assumed names. The other purported entities named as defendants in the Plaintiff's Complaint have defaulted and thereby admitted the Plaintiff's allegations that they constitute mere alter egos of either or both of the Debtor-Defendants.[4] Thus, the sole issues remaining to be decided in the adversary proceeding pertain to the dischargeability of Plaintiff's debt as to each of the Debtor-Defendants, Thomas and Washonda Jackson.

The debt alleged by Plaintiff arose from a series of business transactions by and

---

[3] The facts presented are those the Court believes to be uncontested and are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

[4] Pursuant to Fed. R. Bankr. P. 7055(a), the Court entered default against the following named Defendants on March 22, 2011: NI7 Alaska Auto Sales, LLC (dkt #37), NI7 Financial LLC (dkt #38), Capfin, LLC (dkt #39), Jackmal Management, LLC (dkt #40), NI7 Entertainment, LLC (dkt #41), NI7 Communications, Inc. (dkt #42), Seven Products Marketing, L.P. (dkt #43), TWJ Trust (dkt #44), and Whitefield Financial, LLC (dkt #45). An individual named Barbara Blalock has filed a motion to vacate the entry of default against NI7 Financial, LLC that is pending before the Court.

among the parties whereby Plaintiff provided up to $10 million in funding through promissory notes for the purchase of luxury and custom automobiles to an entity known as Seven Products, L.P. In a series of promissory notes, Seven Products agreed to grant to the Plaintiff security interests in the purchased vehicles in exchange for the funds provided.[5] How much of the original amount was eventually repaid is the subject of dispute and Plaintiff later alleged that the vehicles eventually purchased differed from those under the original agreement. The Plaintiff eventually filed suit against Seven Products, L.P. in Cause No. 219-04285-2008 in the 219th Judicial District of Collin County, Texas on or about December 23, 2008. The Plaintiff added both Debtor-Defendants to that civil action as defendants a few months later through the filing of an amended petition, asserting against them causes of action for breach of contract, fraud, and conversion, and seeking more than $5,000,000.00 in actual damages.[6]

Following extensive discovery, the Plaintiff and the Debtor-Defendants entered into a Settlement Agreement, compliance with which was secured by the execution of an Agreed Judgment, which could be entered in the event of the Defendants' default.[7] There was a subsequent default of the Settlement Agreement by the Debtor-Defendants, prompting the execution and entry of the Agreed Judgment on September 24, 2009.[8] That

---

[5] Plaintiff's Ex. 1.

[6] *Id.*

[7] Plaintiff's Ex. 2 (dkt #114).

[8] *Id.*

**-4-**

Judgment granted to the Plaintiff a recovery against the Debtor-Defendants, jointly and severally, of Four Million, Five Hundred Thousand Dollars ($4,500,000.00), plus post-judgment interest at the rate of five percent (5%) per annum.[9]

On or about April 18, 2010, the Debtor-Defendants, Thomas and Washonda Jackson, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. Several months thereafter, on November 18, 2010, the Plaintiff filed the Complaint in this adversary proceeding. The Plaintiff was subsequently granted leave to amend its original Complaint in this action to include a new ground for non-dischargeability solely against Thomas Jackson under 11 U.S.C. § 523(a)(7).[10] The Plaintiff then filed on July 9, 2012, its First Amended Complaint to Determine Dischargeability[11] (Plaintiff's "Amended Complaint") and the Second Motion for Summary Judgment against Defendant Thomas E. Jackson.[12]

The additional ground incorporated into Plaintiff's First Amended Complaint, and upon which Plaintiff seeks judgment as a matter of law against Mr. Jackson arose as the result of criminal proceedings instituted by the State of Texas against the Defendant in the 401st Judicial District Court of Collin County, Texas (the "Texas Criminal Court") under

---

[9] *Id.*

[10] Dkt #109.

[11] Dkt #112.

[12] Dkt #113.

Cause No. 401-8225-2001.[13]  The Defendant pled guilty in that case to the act of

hindering a secured creditor over $200,000.00 on or about January 5, 2012.[14]  Based on

that plea, the Texas Criminal Court found that the evidence substantiated a finding of

guilt; however, following a prosecutorial recommendation, it deferred that finding and

placed the Defendant on community supervision probation for a period of ten years.

Among the conditions imposed under the community supervision probation, the Texas

Criminal Court required the Defendant to pay a fine of $10,000[15] and fulfill the

obligations listed in the Plea Agreement, which included the full satisfaction of the civil

judgment in Cause No. 219-04285-2008 — i.e., the Agreed Judgment arising from

Defendants' breach of the Settlement Agreement with the Plaintiff.[16]  The Plaintiff's

Second Motion for Summary Judgment seeks a determination that the repayment

obligation, assessed as an agreed condition of community supervision, is non-

dischargeable pursuant to 11 U.S.C. § 523(a)(7).

## Discussion

*Summary Judgment Standard*

The Plaintiff brings its Second Motion for Summary Judgment in this adversary

---

[13] *Id.*

[14] Plaintiff's Ex. 3 at p. 6-10 (dkt #114).

[15] *Id.* at p. 14.

[16] *Id.* at p. 21.  In fact, the Texas Criminal Court required the Defendant to make a $4,000 payment on the Agreed Judgment prior to the acceptance of the plea.  *Id.*

-6-

proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule
incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment
shall be rendered "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue
as to any material fact and that the moving party is entitled to judgment as a matter of
law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).[17]
Affidavits alone, however, "cannot preclude summary judgment unless they contain
competent and otherwise admissible evidence." *Chambers v. Sears Roebuck and Co.*  428
Fed.Appx. 400, 408 (5th Cir. 2011) (*citing* FED. R. CIV. P. 56(e)).

The party seeking summary judgment always bears the initial responsibility of
informing the court of the basis for its motion and identifying those portions of the
"pleadings, depositions, answers to interrogatories, and affidavits, if any," which it
believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at
323.  The moving party asserting that a fact cannot be genuinely disputed must support
that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or

---

[17]  Pursuant to the scheduling order issued in this adversary proceeding, motions for summary
judgment are required to comply in format and content with Local District Court Rule CV-56 and such
motions shall be decided under the procedures stated therein.

> (B) showing that the materials do not establish the ... presence of a genuine
> dispute, or that an adverse party cannot produce admissible evidence to support the
> fact.

FED. R. CIV. P. 56(c).

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion rests on the moving party, "that party must support its motion with credible evidence – using any of the materials specified in Rule 56(c) – that would entitle it to a directed verdict if not contradicted at trial. *Celotex*, 477, U.S. at 331. Upon a *prima facie* showing of entitlement to judgment as a matter of law, the non-movant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (*citing* FED. R. CIV. P. 56(e)). If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless. The substantive law will identify which facts are material. *Id.*

In this case, Plaintiff bears the burden to present a *prima facie* case for non-dischargeability, meaning Plaintiff is entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element required under § 523(a)(7). The Plaintiff asserts that the decision of the Texas Criminal Court to condition Defendant Thomas E. Jackson's community supervision upon, among other things, payment of the Agreed Judgment entered in the civil action between the parties, to which Jackson agreed,

provides the requisite factual underpinning necessary for a determination of non-

dischargeability under the Bankruptcy Code.  To properly assess this claim, the Court

must determine whether the provision at issue, 11 U.S.C. § 523(a)(7) applies to this type

of criminal order.

*Standards for Non-Dischargeability under 523(a)(7)*

      At the outset, the Court notes that, generally speaking, exceptions to discharge are

construed strictly against the creditor, and liberally in favor of a debtor, in order to

advance the "fresh start" objectives of the Bankruptcy Code.  *FNFS, Ltd. v Harwood (In*

*re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011) (*citing Hudson v. Raggio & Raggio, Inc.*

*(In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).  In all cases involving non-

dischargeability, a plaintiff must prove the elements of its claim by a preponderance of

the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

      The Plaintiff alleges that the debt owed to it should be rendered non-dischargeable

pursuant to § 523(a)(7), which states in pertinent part:

    (a) A discharge under section 727 ... does not discharge an individual debtor from
    any debt –

        (7) to the extent such debt is for a fine, penalty or forfeiture payable to and
        for the benefit of a governmental unit, and is not compensation for actual
        pecuniary loss, other than a tax penalty–

11 U.S.C. § 523(a)(7).

This section includes three conjunctive criteria, each of which must be established in

order for a creditor to prevail.  The debt must be for: (1) a "fine, penalty, or forfeiture,"

that is (2) "payable to and for the benefit of a governmental unit" and (3) "not compensation for actual pecuniary loss." *Id.* The first factor defines the relevant debts, while the second and third criteria qualify the first. Not all fines, penalties, or forfeitures are innately non-dischargeable. This section is particularly suited for disposition on summary judgment because it contains no elements regarding fraud or scienter of any kind.[18] The undisputed facts in this context generally will dictate whether the debt is dischargeable[19] but, unlike other subsections of §523(a) that are typically subject to strict construction in favor of a debtor in determining the dischargeability of a particular debt, the jurisprudence in this area reflects additional public policy concerns that impose a considerable degree of flexibility to the actual language utilized in §523(a)(7).

To qualify as a "fine, penalty, or forfeiture" sufficient under this section, a debt must constitute some type of criminal sanction imposed by a state criminal court. *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). That includes formal references to "restitution," *see In re Tinkham*, 59 B.R. 209, 214 (Bankr. D.N.H. 1986), court costs assessed against the

---

[18] For this reason, the substantial effort Defendant expended describing the underlying facts associated with the course of dealing between the parties is misplaced and largely irrelevant. *See* dkt #116 at 4-7. The Court's purpose here is not to address the creation of the Agreed Judgment but rather the manner in which that debt was subsumed into the criminal justice process by the 401st Judicial District Court.

[19] Defendant's "Memorandum in Response to Plaintiff's Second Motion for Summary Judgment" argues that the lack of a trial or any findings resulting therefrom prohibits a finding of non-dischargeability in this case. Dkt #116 at 4. Were Plaintiff arguing collateral estoppel, Defendant might be correct. It is not. Instead, Plaintiff claims that the imposition of community supervision conditioned upon the payment of money satisfies the relevant criteria of § 523(a)(7). If Plaintiff is correct as to the character of the debt, no specific findings of fact by the state criminal court need exist. It would be enough that the debt exists as Plaintiff asserts.

defendant, *Thompson v. Commonwealth (In re Thompson)*, 16 F.3d 576, 580 (4th Cir. 1994), or any other obligation arising from a state criminal process.  The interpretation of this requirement is greatly influenced by a broad principle of non-interference by bankruptcy courts with the criminal process of any state.  Such a precept, rooted in federalism, is explained in greater detail in *Kelly* in which the United States Supreme Court recognized and sought to protect "a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Kelly*, 479 U.S. at 47. The Supreme Court in *Kelly* found that the Bankruptcy Code should be construed so as to preclude any prospect of hampering "the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems." *Id*. at 49.  The Supreme Court thus directed that the literal text contained in §523(a)(7) of the Bankruptcy Code was merely the "starting point" for proper statutory interpretation of that subsection and that courts "must consider the language of ... 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." *Id.* at 43-44.

It is important to note that one of the means the State of Texas has selected to achieve the rehabilitative and deterrence goals of its criminal justice system is the availability of "community supervision" probation as an alternative to the incarceration of an otherwise guilty criminal defendant.  *See generally* 5 TEX. CODE CRIM. PROC. ANN. art. 42.12, §5 (West Supp. 2012).  "Under Texas law, a judge may defer the adjudication

of guilt of particular defendants and place them on 'community supervision' if they plead guilty or nolo contendere." *Tharpe v. Thaler*, 628 F.3d 719, 722 (5th Cir. 2010).  Under the Texas system, though there is no formal finding of guilt at that point, "there is at least a judicial finding that the evidence substantiates the defendant's guilt, followed by conditions of probation that may include a fine and incarceration." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007).[20]  The authorizing statute specifically provides that "[t]he judge may impose any reasonable condition that is designed to protect or restore the community; protect or restore the victim; or punish, rehabilitate or reform the defendant." 5 TEX CODE CRIM. PROC. ANN. art.  42.12, §11(a) (West Supp. 2012). "The true objective of deferred adjudication is to divert the accused from the gauntlet run of the criminal justice system and to allow the judge to enter into a clearly understood pact with the accused that will induce and persuade him to follow the diversionary road." *Miles v. State*, 343 S.W.3d 908, 911 (Tex. App. – Fort Worth 2011, no pet.), *quoting Taylor v. State*, 131 S.W.3d 497, 499-500 (Tex. Crim. App. 2004).  "When the trial court defers adjudication, the case is temporarily stilled and the accused ... [is] permitted an opportunity to demonstrate his capacity for prescribed good behavior during a specified period." *Id.* (internal quotations omitted).  "If the defendant ... thereafter violates a

---

[20]  As a result, deferred adjudication under Texas law is considered to be the functional equivalent of a final judgment of conviction for various purposes under federal law. *Caldwell v. Dretke*, 429 F.3d 521 (5th Cir. 2006) [holding that an order of deferred adjudication under Texas law triggers the one-year statute of limitations for habeas relief];  *DeLeon,* 488 F.3d at  656 [barring civil tort claim under §1983]; *Cisneros*, 112 F.3d at 1281 [constituted prior conviction for purposes of sentence enhancement in subsequent case].

-12-

condition of his community supervision, however, the court holds a [revocation] hearing to determine whether it should then proceed to impose a judgment of guilt." *Tharpe*, 628 F.3d at 722.[21] "One ground for revocation, if proven, is sufficient to revoke a defendant's community supervision." *Maxey v. State*, 49 S.W.3d 582, 584 (Tex. App. – Waco 2001, pet ref'd).

In the case at bar, one of the agreed conditions upon which the Texas Criminal Court granted deferred adjudication community supervision to Thomas Jackson, in lieu of formal conviction and incarceration for the act of hindering a secured creditor, was that the Defendant would "[s]atisfy the civil judgment in Cause No. 219-04285-2008...," clearly referencing the Agreed Judgment in Plaintiff's favor arising from that civil case.[22] This provision is entirely consistent with the stated objectives of the Texas community supervision alternative.   If the Defendant ultimately pays the required amounts to the "hindered secured creditor," he will have satisfied one of the requirements of his community supervision.  If he does not fulfill that requirement, he risks revocation of his community supervision and faces a formal adjudication of guilt and an ultimate sentencing for his admitted crime.

In opposing the summary judgment, the Defendant argues primarily that the Texas Criminal Court never intended to award "restitution" at all, as evidenced by the fact that

---

[21]   A hearing regarding the revocation of community supervision is considered to be an administrative hearing at which the State need only prove theat the defendant violated the terms and conditions of community supervision by a preponderance of the evidence.  " *Miles*, 343 S.W.3d at 911.

[22]   Plaintiff's Ex. 3 at p. 21 (dkt #114).

the form "Order of Deferred Restitution" of January 24, 2012 listed "Restitution" as
"$0.00."[23]  This argument elevates form over substance.  The Texas Criminal Court has
required, and the Defendant has willfully accepted, the repayment of the debt to the
admitted victim as a condition of his community supervision.  It is reversing the loss
created by the Defendant's criminal behavior at the Defendant's expense.  It is an
important component of the various conditions imposed upon the Defendant in order to
nullify the effects of his criminal behavior.  Under the broad interpretation mandated by
*Kelly* in which all penal sanctions are excepted under §523(a)(7) despite the literal text of
the statute, the directive issued by the Texas Criminal Court (and accepted by the
Defendant) that the amounts under the Agreed Judgment are to be paid to the Plaintiff
constitute a significant criminal sanction that it is improper for a bankruptcy discharge to
invalidate.

The second criterion qualifying that such fines, penalties, or forfeitures be
"payable to and for the benefit of a governmental unit" is equally satisfied.  The State of
Texas has elected to utilize community supervision as an integral part of its criminal
justice system.  In seeking to rehabilitate a defendant while still protecting the public and
reversing the effect of any criminal behavior upon any victim, a Texas criminal judge has
wide discretion with regard to the imposition of appropriate conditions under the deferred
adjudication program to accomplish all of those laudatory objectives.  It has a compelling

---

[23]  Defendant's Ex. 5 (dkt #116) at p 1.

interest in promoting the corrective functions of its criminal justice system and the bankruptcy system was not designed as a protective device against the ability of the state to accomplish those ends. The Supreme Court in *Kelly* recognized that "[t]he right to formulate and enforce penal sanctions [is] an important aspect of the sovereignty retained by the States." *Kelly*, 479 U.S. at 47 (*quoting Younger v. Harris*, 401 U.S. 37, 46 (1971)) (internal quotations omitted). For reasons largely driven by these federalism concerns, the Supreme Court stated both its disbelief that "Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges," and expressed an overall reticence to do the same. *Id*. As it stated, "[t]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful considerations that should influence a court considering equitable types of relief." *Id*. (*citing Younger*, 401 U.S. at 44-45). The penal goals of the State of Texas, whether rehabilitative or punitive in nature, guide the decision to impose financial repayment obligations upon the Defendant, not the injury of the victim. Accordingly, *Kelly* found that restitution payments to the state for the benefit of the victim were non-dischargeable under §523(a)(7), *id.* at 53, and subsequent circuit court decisions have extended that rationale when payments are forwarded to victims, notwithstanding the precise language of §523(a)(7). See *In re Thompson*, 418 F.3d 362 (3d Cir. 2005)[24] and *Troff v. State of*

---

[24] *Thompson* applied the broad federalism principles as to penal sanctions referenced in *Kelly* and reversed its earlier post-*Kelly* decision in *In re Rashid*, 210 F.3d 201, 208 (3d Cir. 2000). These cases differ significantly from *Matter of Towers*, 162 F.3d 952, 955 (7th Cir. 1998) which dealt with the dischargeability of a civil penalty arising from consumer fraud.

*Utah (In re Troff)*, 488 F.3d 1237, 1241 (10th Cir. 2007); *Colton v. Verola (In re Verola)*, 446 F.3d 1206 (11th Cir. 2006).[25]

Absent controlling authority from the Fifth Circuit on this issue, the interpretation espoused by the Third and Tenth Circuit Courts of Appeal in *Thompson* and *Troff*, respectively, as well as the Fourth Circuit in *Cost Control* is extremely persuasive.  These courts recognized that the interests of the respective states to protect and rehabilitate individuals through its criminal justice systems are equally promoted by the imposition of financial repayment obligations to victims as when payments are required to be made to the state.  As stated in *Kelly* and quoted in *Troff*,

> [t]he criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole....  Although restitution does resemble a judgment for the benefit of the victim, the context by which it is imposed undermines that conclusion.... Unlike an obligation that arises out of a contractual, statutory, or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender....

*Troff*, 488 F.3d at 1240 (quoting *Kelly*, 478 U.S. at 52).

That same rationale applies to the imposition of the condition to repay the judgment in this case.  The State of Texas is exercising its authority to protect and

---

[25]   The only other circuit court to address the issue post-*Kelly* focused its analysis on the final criteria in §523(a)(7), but clearly agrees with both *Thompson* and *Troff* that criminal payments in the nature of restitution payable to private citizens is non-dischargeable in Chapter 7 cases regardless of the specific language of § 523(a)(7). *See United States Dep't of Housing & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 928 (4th Cir.1995) [holding that a disgorgement order for misbegotten profits that would eventually be payable to the victims themselves was non-dischargeable].

rehabilitate an individual through its criminal justice system by imposing a condition that a victim of a crime be restored through payment of a financial obligation that happened to have been finalized at an earlier time through the entry of an agreed judgment.  That circumstance does not lessen the State's interest in seeing that the guilty defendant restores that which he has wrongfully taken.  Accordingly, the requirement that the Defendant "[s]atisfy the civil judgment in Cause No. 219-04285-2008...," is entirely consistent with the stated objectives of the Texas community supervision statute and, as in *Kelly*, satisfies the requirement under §523(a)(7) that the debt be "payable to and for the benefit of a governmental unit."

The final requirement that the debt not constitute "actual compensation for pecuniary loss" ensures that the payment amount rendered non-dischargeable is again driven by the needs of the criminal justice system and not dictated by the collection rights of a particular civil plaintiff.  It therefore mandates that the repayment obligation reflect a flexible sanction, taking into consideration the defendant-debtor's circumstances and the punitive goals of the state, not simply the financial damage done to the victims.  *Troff*, 488 F.3d at 1241.  Here, the condition to pay the judgment amount meets that criteria. While the repayment obligation necessarily involves compensation for pecuniary loss, the State's interests in rehabilitation and deterrence are promoted by the imposition of the required payment amount and this condition is specifically consistent with one of the stated objectives of the community supervision option.  See 5 TEX CODE CRIM. PROC. ANN. art.  42.12, §11(a) (West Supp. 2012).  This particular obligation is not driven by the specific amount of the Agreed Judgment or the rights of the aggrieved civil Plaintiff.

-17-

Indeed the Plaintiff had no standing to compel protection of its civil collection rights in the criminal process.  The degree to which the Agreed Judgment amount would have to be paid by the Defendant was solely in the discretion of the judge of the Texas Criminal Court.  That court determined, with the recommendation of the prosecutor and the agreement of the Defendant, that, in order to justify the deferred adjudication of the Defendant's guilt, the Defendant should be required to rectify the damage caused by his wrongful behavior by addressing the indebtedness evidenced by the Agreed Judgment. That discretion to tailor the condition to the relevant circumstances of that case, and to impose repayment requirements that it felt was consistent with the goals of the Texas criminal justice system, should not be disturbed by this Court through the entry of a discharge order.

## Conclusion

The federalism concerns expressed by the Supreme Court in *Kelly* are as compelling now as they were in 1986.  Federal courts in general, and bankruptcy courts in particular, should not interfere with state criminal processes and the ability of state criminal courts to impose conditions that promote the goals of that state's criminal justice system.  Here, the Texas Criminal Court ordered the Defendant, as a condition for his receipt of deferred adjudication, to repay the sum due and owing to the Plaintiff under a civil judgment.  In light of the Supreme Court's broad interpretation of §523(a)(7) in *Kelly*, and the desired policy objective to protect a state's right to impose appropriate criminal sanctions without interference by the bankruptcy process, the Court concludes

**-18-**

that the financial obligation of the Debtor-Defendant, Thomas E. Jackson, to the Plaintiff,

New Image Motor Sports Financial, LLC, as reflected in the Agreed Judgment and as

enforced by the community supervision conditions accepted by the Defendant and

imposed by the 401st Judicial District Court of Collin County, Texas, is rendered non-

dischargeable under 11 U.S.C. §523(a)(7).   An appropriate order will be entered

consistent with this Memorandum Opinion.

Signed on 12/07/2012

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE